UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHANDRA BOZELKO : | |
|     Petitioner, : | |
| : | PRISONER |
| v. : | CASE NO. 3:16cv1341 (MPS) |
| : | |
| LEO C. ARNONE, : | |
| DIRECTOR OF ADULT PROBATION, : | |
|     Respondents. : | |

---

**RULING ON PETITION FOR WRIT OF HABEAS CORPUS**

In this habeas corpus action filed pursuant to 28 U.S.C. § 2254, the petitioner, Chandra Bozelko, challenges her 2010 conviction on charges of attempt to commit tampering with a juror, false statement and tampering with physical evidence.

**I.    Factual Background**

The habeas court found the following facts.

On the evening of October 4, 2007, while the petitioner's criminal jury trial was underway, several jurors assigned to the case received telephone calls at their residences from a phone number identified on their respective caller identification systems as originating from Kate's Paperie, a business establishment in Greenwich, Connecticut. A male caller asked the jurors questions regarding their status as jurors and instructed the jurors that they should not find the petitioner guilty of the pending charges. The petitioner submitted an affidavit to the court indicating that she received several calls from jurors at her residence on October 8, 2007.

The police conducted an extensive investigation and determined that the calls did not originate from Kate's Paperie or from the jurors' residences. The police determined that the caller identification information for these calls had been "spoofed," a process whereby the caller attaches false identity contact information to the communication. The police discovered that a "Spoof Card" was purchased on April 12, 2007, with the computer located in the petitioner's residence and her

mother's credit card. A "Spoof Card" allows the user to change caller
identification information through the use of a computer service. A "Spoof Card"
user also has the ability to change his or her voice to that of a male or female.

The call records showed that 123 calls were made with the card beginning on
April 12, 2007, and ending on October 4, 2007. Ninety-four of the calls
originated from the petitioner's father's fax machine phone number, nineteen of
the calls originated from the petitioner's residence phone number and ten of the
calls originated from a Tracfone phone number. The Tracfone, a prepaid cell
phone, was activated from the computer in the petitioner's residence. The "Spoof
Card" and the Tracfone were used to place the phone calls to the jurors on
October 4, 2007. The calls took place over the span of an hour and a half,
beginning at 7:22 p.m. and ending at 8:52 p.m. All of the phone calls made using
the "Spoof Card" were recorded.

A second "Spoof Card" was purchased on October 8, 2007, with the computer
located in the petitioner's residence and a prepaid credit card that was found in the
petitioner's bedroom when the search warrant was executed. The second "Spoof
Card" and the Tracfone were used to make calls to the petitioner's residence from
phone numbers "spoofed" to appear as if the calls originated from the jurors'
residences. There were no recordings made of these calls.

*Bozelko v. Warden*, No. CV 10 4003747, 2013 WL 3801890, at *1–2 (Conn. Super. Ct. June 27, 2013).

## II. Procedural Background

The petitioner was charged with six counts of attempt to commit tampering with a juror, one count of false statement and one count of tampering with physical evidence. The charges arose in connection with the trial in another criminal case against the petitioner. On March 30, 2010, the petitioner entered a guilty plea, under the *Alford*[1] doctrine, to three counts of attempt to commit tampering with a juror. She was sentenced to twenty-seven months incarceration on each count, to be served concurrently. The remaining charges were nolled. *Bozelko v. Commissioner of Correction*, 162 Conn. App. 716, 719-20, 133 A.3d 185, 188 (2016).

---

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

In August 2010, the petitioner filed a petition for writ of habeas corpus in state court on the ground that trial counsel was ineffective for failing to conduct an adequate investigation prior to entry of her plea. The amended petition alleges that trial counsel "failed to conduct an adequate pretrial investigation, including, but not limited to, an investigation and confirmation of a telephone call involving the Petitioner at the time when the alleged crimes took place" and failed "to develop a theory of defense based on all the facts." Am. Pet., Resp'ts' Mem. App. B. ECF No. 10-2 at 29. The state court denied the petition, finding that the petitioner failed to demonstrate deficient performance or prejudice. *Bozelko v. Warden*, No. CV 10 4003747, 2013 WL 3801890 (Conn. Super. Ct. June 27, 2013). The state court also denied the petition for certification to appeal. Resp'ts' Mem. App. B, ECF No. 10-2 at 87-88.

On appeal, the Connecticut Appellate Court considered the merits of the petitioner's underlying claims and concluded that the trial court did not abuse its discretion by denying certification to appeal. The Connecticut Appellate Court dismissed the appeal, *Bozelko*, 162 Conn. App. at 729-30, 133 A.3d at 193-94, and, on March 9, 2016, the Connecticut Supreme Court denied certification to appeal. *Bozelko v. Commissioner of Correction*, 320 Conn. 926, 133 A.3d 458 (2016). The petitioner commenced this action by petition filed on August 8, 2016.

### III. Standard of Review

A federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that her custody violates the Constitution or federal laws. 28 U.S.C. § 2254(a).

A federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the

3

adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir.), *cert. denied*, 537 U.S. 909 (2002). Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. *White v. Woodall*, 572 U.S. ___, ___, 134 S. Ct. 1697, 1702 (2014). Second Circuit law that does not have a counterpart in Supreme Court jurisprudence cannot provide a basis for federal habeas relief. *See Renico v. Lett*, 559 U.S. 766, 778 (2010) (holding that court of appeals erred in relying on its own decision in a federal habeas action); *see also Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) (absent a Supreme Court case establishing a particular right, federal court inference of right does not warrant federal habeas relief).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case. The state court decision must be more than incorrect; it must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded

4

disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also White*, 134 S. Ct. at 1702 (the unreasonable application of Supreme Court holdings "must be objectively unreasonable, not merely wrong; even clear error will not suffice")(internal quotation marks and citation omitted); *Burt v. Titlow*, 571 U.S. ___, ___, 134 S. Ct. 10, 15 (2013) (federal habeas relief warranted only where the state criminal justice system has experienced an "extreme malfunction"); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (objective unreasonableness is "a substantially higher threshold" than incorrectness).

When reviewing a habeas petition, the Court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Cullen v. Pinholster*, 563 U.S. 170, 171 (2011) (standard for evaluating state court rulings where constitutional claims have been considered on the merits and which affords state court rulings the benefit of the doubt is highly deferential and difficult for petitioner to meet). The presumption of correctness, which applies to "historical facts, that is, recitals of external events and the credibility of the witnesses narrating them[,]" will be overturned only if the material facts were not adequately developed by the state court or if the factual determination is not adequately supported by the record. *Smith v. Mann*, 173 F.3d 73, 76 (2d Cir. 1999) (internal quotation marks and citation omitted).

In addition, a federal court's review under both subsections of section 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 180. Because collateral review of a conviction applies a different standard than the direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition. *See Woods v. Donald*, ___ U.S. ___, 135 S. Ct. 1372, 1376

5

(2015) (federal habeas review is "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction though appeal").

**IV. Discussion**

The petitioner asserts two grounds of ineffective assistance of trial counsel. First, she argues that trial counsel did not investigate the charges against her, did not seek or review relevant telephone records, and ignored exculpatory telephone records provided to him by the State. Pet. ECF No. 1 at 5. Second, the petitioner contends that trial counsel failed to investigate or interview a potential alibi witness. *Id.* at 7. She states that she raised both grounds in her state habeas action.

    A.    <u>Evidentiary Hearing</u>

The petitioner first argues that the Court should hold an evidentiary hearing in this case. Section 2254(e)(2) limits the discretion of the federal court to grant an evidentiary hearing. The provision is intended to "ensure that '[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'" *Pinholster,* 563 U.S. at 186 (quoting *Williams v. Taylor,* 529 U.S. 420, 437 (2000)). Thus, "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 185. "[W]hen the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Id.* at 183 (quoting *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007). Because the petitioner in this case litigated both

6

of her claims in state court and has made no showing that she satisfies the requirements of section 2254(e)(2),[2] an evidentiary hearing is not warranted.

> B. <u>Argument Regarding Voluntariness of Plea</u>

In this action, as she did on direct appeal, the petitioner argues in her memorandum that her plea was rendered involuntary because trial counsel failed to investigate her claim. The Connecticut Appellate Court noted that this specific claim was not included as a ground for appeal or asserted in the state habeas action. As the state court had no opportunity to determine whether the petitioner could establish cause and prejudice for any procedural default, the Connecticut Appellate Court considered this argument to be a restatement of the ineffective assistance of counsel claim. *Bozelko*, 162 Conn. App. at 729 n.8, 133 A.3d at 193 n.8.

Before filing a petition for writ of habeas corpus in federal court, the petitioner must properly exhaust her state court remedies. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(1)(A). The Second Circuit requires the district court to conduct a two-part inquiry. First, a petitioner must present the factual and legal bases of her federal claim to the highest state court capable of reviewing it. Second, she must have utilized all available means to secure appellate review of her claims. *See Galdamez v. Keane*, 394 F.3d 68, 73-74 (2d Cir.), *cert. denied sub nom. Galdamez v. Fischer,* 544 U.S. 1025 (2005). As the petitioner was

---

[2] Section 2254(e)(2) provides that the Court shall not hold an evidentiary hearing unless the petitioner shows that her claim relies on "a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court that was previously unavailable" or relies on "a factual predicate that could not have been previously discovered through exercise of due diligence," and that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." The petitioner has failed to satisfy this standard. She cites no new rule of constitutional law, makes no effort to demonstrate a new factual predicate not previously discoverable through due diligence, and makes no effort to satisfy the harm standard in subsection (e)(2).

required to assert the same claims in state court that she presents here and she states that she presented both grounds for relief in her state habeas petition, the Court considers the petition to assert the same examples of ineffective assistance of counsel that were presented on appeal to the Connecticut Appellate Court.

    C.      Ineffective Assistance of Counsel

An ineffective assistance of counsel claim is reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, the petitioner must demonstrate, first, that counsel's conduct was below an objective standard of reasonableness established by prevailing professional norms and, second, that the deficient performance caused prejudice to her. *Id.* at 687-88. Counsel is presumed to be competent. The petitioner bears the burden of demonstrating constitutionally inadequate representation. *United States v. Cronic*, 466 U.S. 648, 658 (1984). To satisfy the prejudice prong of the *Strickland* test, the petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"; the probability must "undermine confidence in the outcome" of the trial. *Strickland*, 466 U.S. at 694. The court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions. *Rompilla v. Beard*, 545 U.S. 374, 381 (2005). To prevail, the petitioner must demonstrate both deficient performance and sufficient prejudice. *Strickland*, 466 U.S. at 700. Thus, if the court finds that the petitioner fails to satisfy one prong of the standard, it need not consider the remaining prong. When reviewing ineffective assistance of counsel claims, federal review "must be doubly deferential in order to afford both the state court and the defense

8

attorney the benefit of the doubt." *Woods*, 135 S. Ct. at 1376 (internal quotation marks and citation omitted).

The *Strickland* standard applies to challenges relating to plea offers. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To satisfy the prejudice component of the *Strickland* standard in the context of a guilty plea, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59; *see also Padilla v. Kentucky,* 559 U.S. 356, 372 (2010) (to establish prejudice to support ineffective assistance of counsel petitioner "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances"). When reviewing a claim of ineffective assistance of counsel during plea bargaining, the federal court must apply a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. at 13.

The Court considers the last reasoned state court decision in evaluating a section 2254 petition. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991). Here, the last reasoned decision was issued by the Connecticut Appellate Court. In that decision, the state court applied the *Strickland* and *Hill* standards. As the state court applied the correct legal standard, the state court decision cannot meet the "contrary to" prong of section 2254(d)(1).

This Court must determine, therefore, whether the state court decision is a reasonable application of Supreme Court law. The question this Court must answer "is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). "[R]eview under § 2254(d)(1) focuses on what a state court knew and did" and

"measure[s]" the state-court decision against Supreme Court "precedents as of 'the time the state court rendered its decision.'" *Pinholster,* 562 U.S. at 182 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")).

The Connecticut Appellate Court recounted the following facts found by the habeas court.

> "At trial, the petitioner introduced records from AT & T and [the residential facility at which the potential alibi witness was allegedly located at the relevant time] to demonstrate what additional investigation by [trial counsel] would have revealed. The AT & T phone records submitted into evidence indicate that several calls were made from the landline at the petitioner's residence on the evening of October 4, 2007. The first outgoing phone call was made at 7:24 p.m., and the last outgoing phone call was made at 10:01 p.m. The durations of the phone calls ranged from approximately one second to four and a half minutes. The petitioner testified that the outgoing calls were made to [the residential facility], [a patient at the facility], relatives of [the patient], and the petitioner's sisters. The notes submitted from [the residential facility], handwritten by [the potential alibi witness], a supervisor of the center's residents, state that [the potential alibi witness] received a phone call from the petitioner on the evening of October 4, 2007. [The potential alibi witness'] notes indicate that the call was received at 7:45 p.m., but they do not indicate how long the phone call lasted. The AT & T phone records indicate that one phone call was made from the petitioner's residence to [the residential facility] at 7:48 p.m., and the call ended at 7:52 p.m.
>
> "[Trial counsel] hired an investigator in this case. The investigator attempted to contact individuals identified by the petitioner as having some involvement with the case, but they refused to speak with him. The investigator also arranged for a forensic review of the petitioner's hard drive, but the forensic examiner found more evidence on the computer that was detrimental to the petitioner than the

state police had found. The court credits [trial counsel's] testimony that he also requested the phone records to substantiate the petitioner's claimed theory of defense, but he did not find them to be helpful. The phone records did not prove that it was the petitioner making the phone calls. Moreover, [trial counsel] determined that several brief phone calls to [the residential facility] would not account for the hour and a half time frame during which the calls were made to the jurors.

"[Trial counsel] wrote a letter to the petitioner, recommending that she plead guilty due to the strength of the state's case against her and her lack of a viable defense. While the voice on the tape recordings of the phone calls made to the jurors using the SpoofCard was disguised in a male voice, the voice on other phone calls recorded on the card was not disguised. [Trial counsel] determined that the petitioner's defense would require her to testify, and he believed that any jury that heard the tape recordings and the petitioner's voice would determine that it was her voice on those phone calls. [Trial counsel] testified that he reviewed the tapes with the petitioner, and that she decided to plead guilty after hearing the recordings. He believed that the plea deal was very favorable in light of the exposure she faced. The sentencing court … thoroughly canvassed the petitioner regarding her plea."

*Bozelko*, 162 Conn. App. at 723–25, 133 A.3d at 190–91 (quoting *Bozelko*, 2013 WL 3801890, at *4-5).

In determining these facts, the habeas court found credible the testimony of trial counsel. It did not find the petitioner credible. Thus, the habeas court found that the petitioner's evidence was insufficient to establish the existence of exculpatory evidence that should have been discovered had trial counsel conducted a proper investigation and interviewed the alibi witness. The habeas court found that trial counsel's investigation was objectively reasonable, and concluded that the petitioner failed to establish the performance prong of the *Strickland* standard. *Bozelko*, 2013 WL 3801890, at *5.

The Connecticut Appellate Court agreed with the habeas court's analysis. The court noted that trial counsel hired an investigator and considered the petitioner's defense that she was making other calls when the jurors were contacted. However, the telephone

records did not support the petitioner's claims. In fact, the Connecticut Appellate Court noted that, in oral argument before that court, the petitioner conceded that the Tracfone calls did not overlap with any calls from the landline. *Bozelko*, 162 Conn. App. at 725, n. 7. Further, the habeas court relied on trial counsel's testimony that he believed that the jury would be able to match the petitioner's voice, which it would hear if she testified, with the undisguised voice on some of the Tracfone calls. *Id.* at 725-26.

The habeas court also found that the petitioner failed to submit sufficient evidence to support the prejudice prong. The court noted that, although telephone calls were made from the landline at the petitioner's residence, she presented no evidence that she was the person making all of those calls. Even if she were, the duration of the calls from the landline was insufficient to have prevented the petitioner from also making the calls to the jurors on the Tracfone. The habeas court found that the only call for which there was evidence showing that the petitioner made the call was a four-minute call to the potential alibi witness. Regarding all other calls, the petitioner presented only her own testimony, which the habeas court found not credible. Further, the habeas court noted the strength of the state's case, including the existence of tape recordings from other calls using the SpoofCard featuring the petitioner's voice, which would have been introduced at trial, and the potential sentencing exposure if she were found guilty on all counts. In light of this evidence, the habeas court did not find credible the petitioner's assertion that she would have gone to trial. *Bozelko*, 2013 WL 3801890, at *5.

The Connecticut Appellate Court noted that the habeas court did not credit the petitioner's testimony and determined that the habeas court used the proper standard in assessing prejudice. The Connecticut Appellate Court determined that the habeas court had properly

considered the role of the strength of the state's case in the petitioner's decision to plead guilty and had properly concluded that any "new evidence" would not have changed the petitioner's mind. *Bozelko*, 162 Conn. App. at 729, 133 A.3d at 193.

Although the petitioner seeks in her memorandum to relitigate the underlying claims in this petition, that is not the function of a federal habeas action. The federal court considers only whether the state court reasonably applied Supreme Court law to the facts before it. When reviewing this claim, the Court is limited to the record presented to the state courts. *See Pinholster*, 563 U.S. at 184; *see also* 28 U.S.C. § 2254(d)(2) (restricting review to "evidence presented in the State court proceeding"). "Provisions like §§ 2254(d)(1) and (e)(2) ensure that '[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'" *Pinholster*, 563 U.S. at 186 (citation omitted). As explained above, the petitioner presented no evidence to the state court that would contradict any state court factual determination. Whether the district court might reach a different conclusion on an initial review of the facts is immaterial. *Harrington*, 562 U.S. at 86 (state court decision must be more than incorrect).

This Court concludes that the decision of the Connecticut Appellate Court was a reasonable application of Supreme Court law to the facts. The petitioner presented no evidence in the state court to establish that she was speaking to other persons on the landline while any of the calls to the jurors were made on the Tracfone. Nor did she present any evidence that she spoke to the potential alibi witness at any time that evening other than the four-minute call that did not overlap with any calls to jurors. The habeas court credited trial counsel's testimony regarding his investigation and assessment of the evidence and did not credit the petitioner's

13

testimony. The petitioner has not shown that these credibility findings were unreasonable in light of the evidence presented in the state court proceedings.

**V.      Conclusion**

The Court concludes that the petitioner fails to establish that there is no reasonable argument that trial counsel satisfied the *Strickland* standard. *See Harrington*, 562 U.S. at 105 (habeas relief on ineffective assistance of counsel grounds should be denied if "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard"). Accordingly, the petition for writ of habeas corpus [ECF No. 1] is **DENIED**. Any appeal of this order would not be taken in good faith. Thus, a certificate of appealability will not issue.

The Clerk is directed to enter judgment in favor of the respondent and close this case.

**SO ORDERED** this 28th day of June 2017, at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge